2012 COA 79

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jaime Orlando GARCIA, Defendant–Appellant.

No. 05CA1922.

Colorado Court of Appeals, Div. I.

May 10, 2012.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

¶ 1 Defendant, Jaime Orlando Garcia, appeals the judgments and sentences entered upon jury verdicts convicting him of three counts of sexual assault—victim incapable of appraising, with sentence enhancers for two of those counts, three counts of sexual assault—victim physically helpless, second degree burglary, and third degree assault. We affirm in part, vacate in part, and remand for resentencing and correction of the two mittimuses.

## I. Background

¶ 2 Between October 2002 and January 2004, five women alleged that Garcia committed sexual misconduct against them while they were intoxicated or drugged. Garcia was charged in two separate cases with numerous sexual misconduct counts, as well as burglary and assault of one woman's boyfriend, N.W.

¶ 3 The People requested that both cases be joined. The trial court granted the People's request over Garcia's objection. The joinder of cases and the consolidation of offenses against separate victims in a single trial are a basis for this appeal.

¶ 4 After a trial on all counts, a jury acquitted Garcia of the charges involving two of the victims, R.B. and J.N. The jury convicted Garcia of second degree burglary, third degree assault against N.W., three counts of sexual assault—victim physically helpless (B.J.W., V.J., and J.M.), three counts of sexual assault against a victim incapable of ap-

**288**

praising nature of conduct (B.J.W., V.J., and J.M.), and a sentence enhancer for impairing J.M.'s power to appraise her conduct by means of drugs or intoxicants.

¶ 5 The trial court entered judgment of conviction on the jury's verdict, and also found a sentence enhancer, not found by the jury, concerning V.J. It sentenced Garcia to concurrent sentences of twelve years and two years for the burglary and assault of N.W., respectively, to be served consecutively with fifteen years to life for his convictions related to B.J.W. and with two concurrent sentences of fifteen years to life for the assaults against V.J. and J.M.

## II. Prosecutorial Misconduct

¶ 6 As an initial matter, we resolve Garcia's contention that the prosecutor committed misconduct twice during closing argument, once in denigrating his female attorney, and again in implying that the jury could consider his propensity for committing sexual misconduct. In an issue of apparent first impression, we conclude that a prosecutor may not argue that a defendant in a sexual assault case unfairly seeks to bolster his case by using his female attorney to blame the female victims for the defendant's conduct. However, we conclude the improper argument here does not require reversal.

### A. Standard of Review

■ ¶ 7 In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of the misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction. *People v. Merchant,* 983 P.2d 108, 114 (Colo. App.1999).

¶ 8 When no contemporaneous objection is made, the plain error standard of review applies. *People v. Cevallos—Acosta,* 140 P.3d 116, 122 (Colo.App.2005). To constitute plain error, prosecutorial misconduct must be "flagrant or glaringly or tremendously improper," and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Salyer,* 80 P.3d 831, 839 (Colo.App.2003). Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Weinreich,* 98 P.3d 920, 924 (Colo.App.2004), *aff'd,* 119 P.3d 1073 (Colo. 2005).

### B. Denigration of Defense Counsel

■ ¶ 9 The defense theory during trial was that the victims regretted having sexual contact with Garcia, had "buyer's remorse," and sought to minimize their responsibility for what occurred. Of his two defense attorneys, the female attorney delivered opening statement and initially articulated this theory. Garcia's male counsel reiterated the theory in closing argument.

¶ 10 In response, the prosecutor stated in his closing argument:

> Now in their opening, [the female defense attorney], she said these women just have buyers['] remorse. They tell you these women just don't want to take responsibility for what they did. It is the women's fault. It is all of those different women's fault. Just because in opening they have another woman blaming those women doesn't make it believable.

The defense did not object to this statement.

¶ 11 Garcia contends that the reference to his attorney's gender in this statement denigrated defense counsel and implied that she attempted to strengthen an otherwise weak argument based solely on her gender.

¶ 12 We conclude the prosecutor's comment about the defense attorney's gender was inappropriate. *See* American Bar Association Standards for Criminal Justice 3–5.8(c) & cmt. (3d ed. 1993) ("[t]he prosecutor should not make arguments calculated to appeal to the prejudices of the jury" and "[t]he prosecutor should not, moreover, use arguments which are, in essence, personal attacks on defense counsel").

■ ¶ 13 A trial is not a referendum on the conduct of the attorneys, and disparagement of opposing counsel is improper. *See United States v. Young,* 470 U.S. 1, 7, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Appeals

based on racial identity or other attributes of counsel are also improper. *Bates v. United States,* 766 A.2d 500, 508 (D.C.2000) ("Charging defense counsel with 'racism' was an egregious ad hominem attack.").

¶ 14 In *Bates,* the prosecutor used the fact that he and defense counsel were of different races to rebut defense counsel's closing argument and argued that defense counsel relied on race to support his argument. *Bates,* 766 A.2d at 508. The court held that this was an improper appeal "to evaluate the defense challenge to the government's case on the basis of counsel's race and background rather than the merits." *Id.*

¶ 15 Here, the strength of Garcia's case should not depend on whether he was represented by a man or a woman. The prosecutor argued that the jurors should not be swayed because the female defense attorney was blaming the female victims for Garcia's conduct. This argument improperly sought to shift the focus from the strength of the evidence to the gender of Garcia's counsel.

■ ¶ 16 However, the statement did not rise to the level of plain error. *See People v. Collins,* 250 P.3d 668, 678–79 (Colo.App. 2010); *People v. Kenny,* 30 P.3d 734 (Colo. App.2000).

¶ 17 The prosecutor's improper statement was not repeated. *See Domingo–Gomez v. People,* 125 P.3d 1043, 1053 (Colo.2005) ("Comments that were 'few in number, momentary in length, and were a very small part of a rather prosaic summation' do not warrant reversal under the plain error standard.") (quoting *People v. Mason,* 643 P.2d 745, 753 (Colo.1982)). Nor did the prosecution insinuate that defense counsel lacked a good faith belief in her client's case. *Cf. People v. Jones,* 832 P.2d 1036, 1039 (Colo. App.1991) (prosecutor implied that opposing counsel did not have a good faith belief in the innocence of her client when he suggested that she knew that the prosecution's argument was true and that the defense should concede the issue).

### C.   Propensity

■ ¶ 18 Garcia next contends that the prosecutor's propensity argument during the rebuttal phase of closing argument also warrants reversal. We disagree.

¶ 19 The prosecutor stated:

Police came out in April of '03, again 11–7–03, and 1–2–04. The police are involved in all of those. You can ask yourself, and you can draw inferences. You can ask yourself, is it reasonable that this poor nice guy that went to a bar just tried to lend a shoulder for sad girls to talk to, gets caught up in a sexual assault allegation. You can ask yourself after having that happen to him, was it reasonably believable behavior that he would go back out [and] find another drunk sad girl and take her.

. . .

Garcia objected, and the trial court sustained the objection. The court also instructed the jury to disregard the prosecutor's last statement.

■ ¶ 20 In addition, the court instructed the jury not to consider evidence of one charge as propensity evidence for the other charges before each witness testified and in the final written instructions. We presume that the jury followed the court's instructions, absent evidence to the contrary. *Qwest Services Corp. v. Blood,* 252 P.3d 1071, 1088 (Colo.2011).

¶ 21 Garcia contends that the prosecution's misconduct materially affected the jury verdicts. *See Merchant,* 983 P.2d at 114. However, the jury's acquittal of Garcia on all charges concerning R.B. and J.N. suggests otherwise. *See People v. Barnum,* 217 P.3d 908, 910 (Colo.App.2009).

### III.   Severance of Charges

¶ 22 Garcia next contends that the trial court abused its discretion in denying his motion to sever the charges into separate trials under Crim. P. 14. He maintains that his right to testify about the consent of J.M., B.J.W., and V.J. was unfairly restricted by the risk he faced in refraining from testifying concerning R.B. and J.N. Because we conclude that Garcia has not shown prejudice, we disagree.

## A. Standard of Review

¶ 23 Whether to sever charges under Crim. P. 14 is a determination within the sound discretion of the trial court. *People v. Walker*, 189 Colo. 545, 549, 542 P.2d 1283, 1286 (1975). We will not overturn such a decision absent an abuse of its discretion. *Id.*

## B. Analysis

¶ 24 The People originally charged Garcia in two separate informations. One contained counts of sexual assault of B.J.W., burglary, and assault of B.J.W.'s boyfriend; the other contained twelve counts of sexual assault of J.M., R.B., J.N., and V.J. The trial court consolidated the two cases after the People filed a notice of their intent to introduce evidence of Garcia's alleged conduct involving all five victims in both cases under CRE 404(b) and moved for permissive joinder. Crim. P. 8(a)(3), 13; *see People v. Gross*, 39 P.3d 1279, 1282 (Colo.App.2001) (consolidation of offenses of same or similar character or based on transactions connected as a single scheme or plan is generally proper if evidence of each transaction would be admissible in separate trials under CRE 404(b)).

¶ 25 Following the joinder of the cases, Garcia moved to sever the charges pertaining to each of the five separate victims and incidents or, alternatively, sever some of the charges based on his defenses, pursuant to Crim. P. 14. The trial court denied Garcia's motion to sever the charges.

¶ 26 To protect Garcia against unfair prejudice, the court offered to restrict the People's cross-examination if he testified concerning some charges but not others, and to instruct the jury that his decision to testify only regarding certain counts could not lead to an inference of guilt concerning the other counts. Garcia declined the court's offer.

¶ 27 During his advisement pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984), Garcia stated that testifying with respect to some charges and not to others, even with a jury instruction, was "a grave concern" to him. He decided not to testify.

¶ 28 A trial court may order separate trials on the counts charged if joinder of the offenses will prejudice a defendant. Crim. P.

14. Because a court's refusal to sever counts is discretionary, a defendant challenging such a refusal bears the burden of demonstrating (1) the joinder caused actual prejudice and (2) the trier of fact was unable to separate the facts and legal principles applicable to each offense. *People v. Knight*, 167 P.3d 147, 151 (Colo.App.2006); *see also Walker*, 189 Colo. at 550, 542 P.2d at 1287 (defendant must make "a convincing showing" of prejudice by showing he had both important testimony to give concerning one count and strong need to refrain from testifying on the other) (quoting *Baker v. United States*, 401 F.2d 958 977 (D.C.Cir.1968)).

¶ 29 Garcia argued in his motion that trying him on all fifteen counts in a single trial would confuse the jury, rouse the jury to overmastering hostility, and unfairly restrict his right to testify concerning certain counts and not others. He maintained that he had important testimony concerning the consent of V.J., J.M., and B.J.W. and self-defense relating to the assault against B.J.W.'s boyfriend, but needed to refrain from testifying regarding R.B. and J.N. because the prosecution's evidence was insufficient to establish his guilt.

¶ 30 The record does not demonstrate that the jury was confused or inflamed by the joinder of all charges. The jury's acquittal of Garcia on all charges concerning R.B. and J.N. indicates that the jury was able to separate the facts, legal principles, and defenses applicable to these charges from others. *See Knight*, 167 P.3d at 151.

¶ 31 Even if we assume that Garcia had important testimony about his self-defense and consent defenses, he has not shown he was prejudiced because his right to refrain from testifying on other counts was limited. He argues that the trial court's offer to restrict his cross-examination to those counts on which he chose to testify and to give a limiting jury instruction was insufficient to remedy any prejudice to him because his silence on one count could have been damaging in the face of his denial of other counts. However, Garcia has not shown why the trial court's proposed limiting instruction was an unsatisfactory response to his con-

cern. *See Qwest Services Corp.*, 252 P.3d at 1088 (jury is presumed to follow instructions absent evidence to the contrary).

¶ 32 Accordingly, we conclude Garcia has not demonstrated that he was prejudiced by the trial court's refusal to sever charges. We thus discern no abuse of discretion by the trial court.

## IV.  Sufficiency of the Evidence

¶ 33 Garcia next contends that insufficient evidence supported the jury's finding that he was guilty of a sentence enhancer for his conviction of assault against J.M. We disagree.

### A.  Standard of Review

¶ 34 To determine whether the evidence is sufficient to support a conviction, we review the record de novo. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005); *People v. Martinez*, 165 P.3d 907, 913 (Colo.App.2007) (the same standard applies to sentence enhancement provisions). "[O]ur task is to determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt." *People v. Dunlap*, 124 P.3d 780, 819 (Colo.App.2004). "It is the jury's function to consider and determine what weight shall be given to all parts of the evidence." *People v. Jones*, 191 Colo. 110, 112, 551 P.2d 706, 707 (1976).

### B.  Analysis

¶ 35 As an initial matter, we reject the People's contention that Garcia failed to preserve his challenge to the sufficiency of the evidence because he did not move for a judgment of acquittal at trial. A defendant may challenge the sufficiency of the evidence without moving for a judgment of acquittal in the trial court. *People v. Peay*, 5 P.3d 398, 400 (Colo.App.2000).

¶ 36 We next address Garcia's contention that the evidence was insufficient to support the sentence enhancement because J.M. willingly took a pill he gave her. We disagree.

¶ 37 Sexual assault of a victim who a defendant knows is incapable of appraising the nature of his or her conduct is a class four felony, unless attended by certain circumstances. § 18–3–402(1)(b), (2), (4), C.R.S. 2011. One such circumstance is the defendant substantially impaired the victim's power to appraise or control the victim's conduct by employing, without the victim's consent, any drug, intoxicant, or other means for the purpose of causing submission. § 18–3–402(4)(d), C.R.S.2011 (enhances offense to a class three felony). Garcia was charged and convicted of sexual assault—victim incapable against J.M., along with this sentence enhancer.

¶ 38 Consent has a specialized meaning in the context of sexual assault. *People v. Pahlavan*, 83 P.3d 1138, 1142 (Colo.App. 2003). Consent means "cooperation in act or attitude pursuant to an exercise of free will *and with knowledge of the nature of the act.*" § 18–3–401(1.5), C.R.S.2011 (emphasis added).

¶ 39 Viewed in the light most favorable to the prosecution, the evidence showed the following: J.M. went home with Garcia after the two had been drinking together at a bar. When J.M. complained of a headache, Garcia gave her a pill which he described as comparable to eight Aleve pills and good to cure insomnia. J.M. voluntarily ingested this pill, passed out in Garcia's bed shortly thereafter, and woke up to Garcia having sex with her. She could not move or talk and soon blacked out again.

¶ 40 When she came to, she got dressed, and went into the living room. She felt disoriented, passed out on the floor, and again awoke to Garcia having sex with her. Again, she blacked out.

¶ 41 At trial, J.M. testified that she had taken eight doses of Aleve before without any adverse effects, and did not expect or know the pill would impair her.

¶ 42 Based on J.M.'s testimony, there was sufficient evidence for the jury to find that J.M. did not know or expect that taking the pill would render her unconscious and disoriented. Accordingly, we conclude that the jury's finding that Garcia induced J.M. to

take the pill without her consent was supported by sufficient evidence.

## V. Jury Instructions

¶ 43 Garcia next contends that the trial court committed plain error in instructing the jury on the charges of sexual assault—victim physically helpless because the court did not notify the jury it had to find Garcia knew the victims did not consent to his actions. We disagree.

### A. Standard of Review

¶ 44 A trial court must properly instruct the jury on every element of a crime. *Griego v. People*, 19 P.3d 1, 7 (Colo.2001). We review for plain error an unpreserved challenge, such as this, that a jury was improperly instructed on an element of a crime. *Id.* Plain error is both obvious and substantial, and "so undermined the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller*, 113 P.3d 743, 750 (Colo.2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)).

### B. Analysis

¶ 45 To prove sexual assault—victim physically helpless, the prosecution must prove beyond a reasonable doubt that the defendant knowingly inflicted sexual intrusion or penetration on a victim who was physically helpless, and whom the defendant knew to be both physically helpless and nonconsenting. § 18–3–402(1)(h), C.R.S.2011.

¶ 46 The trial court instructed the jury on each of the three counts of sexual assault—victim physically helpless involving victims V.J., B.J.W., and J.M. as follows:

The elements of the crime of Sexual Assault—Physically Helpless are:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
4. inflicted sexual intrusion or sexual penetration on [named victim] and
5. that [named victim] was physically helpless, and

6. the defendant knew that [named victim] was physically helpless, and
7. that [named victim] had not consented.

¶ 47 Garcia contends that the omission of the phrase "the defendant knew" from paragraph seven of the instruction improperly instructed the jury on the People's burden. He maintains the jury should have been instructed that the People had to independently show his awareness of the victims' nonconsent to convict him on this charge. *See Dunton v. People*, 898 P.2d 571, 573 n. 3 (Colo.1995).

¶ 48 However, even if we assume the instruction was erroneous, we are not persuaded, for three reasons, that any instructional error here was obvious and substantial.

¶ 49 First, the trial court's instruction closely tracks the language of subpart (1)(h) of the sexual assault statute. § 18–3–402(1)(h). Instructions tracking the language of a statute are generally sufficient. *People v. O'Connell*, 134 P.3d 460, 465 (Colo.App.2005).

¶ 50 Second, the instruction mirrors the pattern jury instruction on sexual assault—victim physically helpless. CJI–Crim. 12:01 (1983); *cf.* COLJI–Crim. 3–4:08 (2008) (amended after Garcia's 2005 trial). Pattern jury instructions carry weight and should be considered by a trial court. *Dunlap*, 124 P.3d at 812–13.

¶ 51 Third, a reasonable juror reading the instructions as a whole would have understood that the element of Garcia's knowledge in paragraph six applied equally to the victim's nonconsent in paragraph seven.

¶ 52 Accordingly, Garcia's contention that the jury might have construed paragraph seven of the jury instruction not to require a showing of Garcia's knowledge of the victims' nonconsent "was not so clear cut and obvious that the trial court should have considered it without the benefit of an objection." *O'Connell*, 134 P.3d at 465; *see also Dunlap*, 124 P.3d at 812–13 (affirming instruction that tracked language of statute and pattern jury instruction); *People v. Laurson*, 15 P.3d 791 (Colo.App.2000) (same).

## VI.  Sentencing

¶ 53 Garcia contends that the trial court erred in sentencing him because (1) the mittimus incorrectly reflects that he was convicted of the sentencing enhancer of section 18–3–402(4)(d), and (2) his two sexual assault convictions for each of the victims V.J., B.J.W., and J.M. were based on identical acts and offenses and should have merged.  The People concede Garcia's first contention is correct, and we agree.  We also agree with his second contention to the extent it concerns the convictions involving V.J. and B.J.W.

¶ 54 Because Garcia did not object to these sentencing errors, we review for plain error. *People v. Tillery*, 231 P.3d 36, 48 (Colo.App. 2009), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo.2011).

¶ 55 The jury found Garcia guilty of count one, sexual assault—victim incapable against V.J., but found that he did not substantially impair her power to appraise or control her conduct by nonconsenually employing drugs or intoxicants.  Accordingly, his conviction for the subsection (4)(d) sentencing enhancer as to count one constitutes plain error.

¶ 56 Garcia also argues that each pair of sexual assault convictions involving a single victim should merge.  We agree as to the convictions of sexual assault against V.J. and B.J.W.

¶ 57 "Multiplicity is the charging of the same offense in several counts, culminating in multiple punishments." *Quintano v. People*, 105 P.3d 585, 589 (Colo.2005).  Multiplicitous convictions violate the constitutional prohibition against double jeopardy. *Woellhaf v. People*, 105 P.3d 209, 214 (Colo.2005); *People v. Vigil*, 251 P.3d 442, 448 (Colo.App. 2010).

¶ 58 To determine whether a defendant's conduct constituted factually distinct acts, and therefore factually distinct offenses, we examine various factors including whether the acts occurred at different times and were separated by intervening events. *Quintano*, 105 P.3d at 590–91.  Convictions not based on separate offenses merge with one another. *See Woellhaf*, 105 P.3d at 220.

¶ 59 The People concede, and we agree, that Garcia's convictions of sexual assault—victim incapable against V.J. and B.J.W., must be vacated because they were not based on distinct acts and therefore merge with his convictions for sexual assault—victim physically helpless (class three felonies). *See id.* at 219 (merging convictions where no evidence was presented to support separate offenses); *see also People v. Delci*, 109 P.3d 1035, 1038 (Colo.App.2004) (convictions with shorter sentences should merge into those with longer sentences to maximize punishment).

¶ 60 In contrast, the record establishes that Garcia sexually penetrated J.M. on two separate occasions while she was nearly unconscious.  These distinct acts support two separate convictions. *See Quintano*, 105 P.3d at 592 (record supported five distinct incidents of sexual contact based on changes in location and temporal proximity).

¶ 61 Garcia contends that, because the jury was not specifically instructed to find him guilty of two distinct acts, the record fails to establish two convictions against him for the sexual assaults of J.M. However, J.M.'s testimony established that there were two distinct incidents of sexual penetration by Garcia, *see id.* at 594, and the trial court gave the jury a unanimity instruction which "averted the pitfall of more than one conviction for the same acts" with respect to J.M. *Id.* at 595.

¶ 62 We may affirm the trial court's judgment on any ground that is supported by the record. *People v. Quintana*, 882 P.2d 1366, 1375 (Colo.1994).  Because the record supports two distinct acts against J.M., we affirm Garcia's two convictions of sexual assault as to her. *See Quintano*, 105 P.3d at 592.

¶ 63 In case 04CR2908, we affirm the judgment of conviction and sentence on counts eight and nine, both class three felony sexual assaults against J.M., including the sexual assault—victim incapable charge which was enhanced under section 18–3–402(4)(d). However we remand to the trial court with directions to vacate the conviction on count

one and the subsection (4)(d) sentence enhancer, and to resentence Garcia accordingly.

¶ 64 In case 03CR1943, we vacate the conviction on count five, affirm the convictions and sentences on counts one and three, burglary and assault of N.W., respectively, and direct the trial court to resentence Garcia.

¶ 65 The judgments and sentences are affirmed in part and vacated in part, and the case is remanded for resentencing and correction of the two mittimuses.

FOX and ROTHENBERG *, JJ., concur.